Edward J. PILLIS, Petitioner,

v.

**DISTRICT OF COLUMBIA HACKERS' LI-CENSE APPEAL BOARD, Respondent.**

No. 9608.

District of Columbia Court of Appeals.

Submitted June 22, 1976.

Decided Dec. 1, 1976.

Rehearing Denied Jan. 10, 1977.

Edward J. Pillis, pro se.

Louis P. Robbins, Acting Corp. Counsel, Washington, D.C., at the time the brief was filed, Richard W. Barton and S. Perry Jones, Asst. Corp. Counsel, Washington, D.C., were on the brief, for respondent.

Before FICKLING, KERN and YEAGLEY, Associate Judges.

KERN, Associate Judge:

Petitioner, licensed to operate a taxi within the District of Columbia, challenges

an order entered by the Hackers' License Appeal Board (Board) suspending for three months his license. After review of the record and consideration of petitioner's numerous contentions, we are satisfied that there is substantial evidence in the record to sustain the Board's findings and its conclusions of law are not erroneous. Accordingly, the suspension order must be affirmed.

There was testimony that petitioner was operating his taxicab on the night of March 5, 1975, and parked in the hack stand in front of the Mayflower Hotel at about 9 p.m. The Mayflower's doorman signaled to petitioner to drive forward to the hotel entrance for the purpose of picking up a passenger. When petitioner failed to move his cab, the doorman walked to the hack stand with the passenger and attempted to open the rear door of petitioner's cab. Finding the door locked, the doorman asked the driver to unlock the door so that the passenger could get in the cab. Petitioner rolled down his front window and inquired where the passenger wanted to go. The doorman replied that he did not know and it made no difference where she wanted to go because the driver was required to take her since he was parked in the hack stand. To this statement the petitioner replied: "Like hell I am", and proceeded to drive away from the stand even while the doorman held the door handle of the cab. The doorman testified that as a consequence of petitioner's sudden acceleration of the cab, he was jerked forward and consequently fell into the street. Petitioner testified that although he saw the doorman holding onto the door as he pulled away, he did not see him fall into the street.

Thereafter, the doorman filed a complaint with the Board and petitioner was charged with two violations of the Public Service Commission of the District of Columbia (PSC) Taxicab Regulations: (1) Driver Not to Refuse Passenger When Available, 14 DCRR § 350.7, and (2) Taxicab to be Operated in Lawful, Safe, Proper Manner, 14 DCRR § 350.3. The Board after hearing the testimony made the following findings and conclusions in the case: "After careful consideration of all evidence and testimony presented at the above-mentioned hearing, it was the unanimous finding by the Board that on March 5, 1975 at approximately 9:10 p.m. at a cab stand at the Mayflower Hotel, a citizen attempted to hire your public vehicle and you did refuse to transport. TOWIT: [sic] You refused to pick up said citizen. Your conduct was improper. TOWIT: You drove off while the doorman had his hand on the door knob and you were rude."

█ Petitioner at the outset challenges the sufficiency of the findings of fact and the correctness of the conclusions made by the Board. The administrative practice and procedure of the Board is governed by the District of Columbia Administrative Procedure Act (DCAPA). D.C.Code 1973, § 1–1501 et seq. See Proctor v. Hackers' Board, D.C.App., 268 A.2d 267, 268 (1970). The DCAPA provides that agencies who hear contested cases must make findings of fact and conclusions based upon those findings which shall be supported by "reliable, probative, and substantial evidence."[1] We believe that the Board could have stated its findings more comprehensively and set forth its conclusions more precisely so as to state specifically the Regulations that

---

1. D.C.Code 1973, § 1–1509(e). The rules of practice and procedure of the Board are compiled in 34 DCRR § 1.1 et seq. Special Edition. This should not be confused with the District of Columbia Human Rights Law 34 DCRR § 1.1 et seq. In the proposed District of Columbia Municipal Code (DCMC), the Board's rules of practice will be compiled in 46 DCMC Part II.

We note that 34 DCRR § 6.1 Special Edition requires the Board to make a finding and then a decision. We construe this rule to permit the Board to follow the DCAPA which directs agencies to make findings, conclusions based upon those findings and then a decision.

were violated by petitioner. *See Miller v. District of Columbia Commission on Human Rights,* D.C.App., 339 A.2d 715 (1975). However, we are persuaded that the Board's findings and conclusions were set forth adequately for our review and are sustained by substantial evidence based on the whole record.

■ Petitioner next argues that the Board erred during the course of the hearing in refusing his proffer of evidence to impeach the credibility of the doorman. Petitioner alleged that the doorman was engaged in a "kickback" scheme with other taxi drivers by providing those drivers with the most lucrative fares from the hotel. Petitioner proffered evidence that he had earlier confronted the doorman with his knowledge of this alleged practice and as a result the doorman's complaint concerning the March 5th incident was but an effort to get even with petitioner. The Board refused the proffer on the basis that prior contacts with the doorman were irrelevant to the two charges against the petitioner.[2] Although petitioner's proffer arguably might bear upon the credibility of the doorman by showing bias on his part, it was undisputed that petitioner had been at the hack stand of the hotel and then drove away without picking up the doorman's

passenger while the doorman's hand was on the door handle of the taxi.[3] Thus, the prior confrontation, even if true, was not relevant to either the question of refusing to transport a passenger or driving improperly.

■ Petitioner also contends that the Board had no authority to suspend his license because of an error in the compilation of the Board's Rule 6.4, Suspension or Revocation of Hackers' Licenses, 34 DCRR § 6.4 Special Edition. In considering this contention, we first set forth the statutory scheme regulating the operation of taxicabs in the District of Columbia. The PSC may make and enforce regulations pertaining to the actual operation of taxicabs;[4] the City Council may make regulations for the issuance, suspension, and revocation of taxi drivers' licenses;[5] and the Board may upon complaint and after a hearing suspend or revoke licenses for a violation of any of these regulations.[6]

Turning now to this case, the PSC has prepared a set of operating rules governing the conduct of taxi drivers. 14 DCRR § 300 *et seq.* The City Council in turn has promulgated a Regulation, 71-34 (November 29, 1971), authorizing the Board to suspend and revoke licenses upon violations

2. The Board also denied a written request by petitioner for a continuance of the hearing to enable the Board to subpoena certain cab drivers who, petitioner asserted, would testify to the "kickback" scheme in which the doorman was engaged. The Board ruled that the hearing inquiry was concerned only with charges filed against petitioner.

3. Petitioner asserts on appeal that his refusal to transport the passenger was justified because he had a right pursuant to 14 DCRR § 305.12 to demand the fare from her in advance and the doorman prevented him from doing so by refusing to permit him to inquire about the passenger's destination. The record of the hearing, however, reflects no concern by petitioner that the passenger would not ultimately pay her fare so as to justify a demand by him for payment in advance. Moreover, while petitioner asserted the doorman was disorderly in that he rapped on the cab window, he has never

claimed that the putative passenger was disorderly so as to enable him to argue some justification in driving away without taking her.

4. D.C.Code 1973, § 47–2331(d) authorizes the PSC to "make and enforce all such reasonable and usual police regulations as it may deem necessary for the proper conduct, control and regulation of [taxicabs] . . . ."

5. D.C.Code 1973, § 47–2345(a) has been construed by this court to enable the City Council to promulgate specific grounds for suspension or revocation of taxi drivers' licenses. *See Proctor v. Hackers' Board, supra* at 269 n. 8.

6. D.C.Code 1973, Org.Order No. 13 Part III § 1(b), Title I—Appendix. By this order the Commissioner (Mayor) delegated his authority over suspension and revocation of taxi drivers' licenses to the Board.

of the PSC rules. The Council's Regulation was validly enacted and properly *published* in the District of Columbia Register.[7] Subsequently, it was incorrectly compiled in the District of Columbia Rules and Regulations, 34 DCRR § 6.4 Special Edition. Specifically, 34 DCRR § 6.4 Special Edition omitted Part 350 Operating Rules: (B) Personal Requirements for Drivers.[8] These operating rules are among the rules mentioned above that were promulgated by the PSC to govern taxi driver conduct. Petitioner was charged with violating two subsections of Part 350 of the PSC's operating rule. However, since Part 350 was inadvertently left out of 34 DCRR § 6.4 Special Edition, petitioner argues that the Board had no power to determine whether he had violated the two subsections of Part 350.

In considering this contention we note preliminarily that petitioner makes no claim of being (a) unaware of what regulations he was charged with violating or (b) prejudiced by the mistake in the defective compilation of Rule 6.4.[9] In addition, since the Council's Regulation was validly enacted, properly published in the D.C. Register, and accessible to petitioner, we are unwilling now to declare it invalid because of an inadvertent omission in its compilation resulting from a typographical

error. *See D.C. Human Relations Commission v. National Geographical Society,* 154 U.S.App.D.C. 255, 475 F.2d 366 (1973).

■ Finally, petitioner argues that he was denied access to a file prepared before hearing by the Board and was thus unable to prepare an adequate defense to the charges against him.[10] The record reflects that petitioner had gone to the Board and requested, pursuant to 34 DCRR § 4.3 Special Edition, to see his "Appeal File."[11] This request was denied but a clerk in the office apparently read the complaint to petitioner. Rule 4.3 on its face and when read in conjunction with the other rules in Title 34 Special Edition seems to apply only to applicants for licenses. However, if this were true then *applicants* for licenses are afforded, through access to the Board's files, more precedural protection than are *licensed* taxi drivers who are faced with suspension or revocation of the licenses they already hold. Such an obviously disparate treatment of licensees in contrast to applicants for licenses is troublesome since it may raise constitutional problems. The Corporation Counsel, apparently aware of this potential difficulty, concedes (Br. at 11) that the Rule opening an "Appeal File" to inspection applies not just to applicants for hack licenses who

---

7. Regulation 71–34 (November 29, 1971) was published in the District of Columbia Register, 18 D.C.Reg. 356 (December 13, 1971) and provides for "Suspension or Revocation of Hackers' Licenses. A hacker's identification license may be suspended or revoked by the Board for violation of any provision of the following parts of Title 14, DCRR Public Service Commission: Part 305—Rates, Fares and Charges; Part 310—Group Riding; Part 335—Cruising Lights; Part 340—Display of Licenses; Part 345—Operating Rules: (A) In General; Part 350—Operating Rules: (B) Personal Requirements for Drivers; Part 355—Operating Rules: (C) Miscellaneous."

8. In addition to omitting Part 350 in the compilation, the next section, Part 355 Operating Rules: (C) Miscellaneous, was omitted as well.

9. Petitioner received a show cause order approximately three weeks before the hearing detailing the complaint against him and the specific sections of the PSC Taxicab Regulations of which he was charged with violating.

10. Petitioner asserts also that the Board (1) failed to provide petitioner with the assistance of counsel, but the record reflects he chose to proceed pro se and, in any event, the Board was not obliged to furnish at its own expense counsel to petitioner, *see In re Groban,* 352 U.S. 330, 77 S.Ct. 510, 1 L.Ed.2d 376 (1957) ; and the Board (2) allowed a forgery in part of the transcript to occur but we note the hearing was tape-recorded and then transcribed accurately.

11. 34 DCRR § 4.3 Special Edition provides: "The documents transmitted by the Chief [of Police] shall constitute the Appeal File, which shall be available for inspection at the Offices of the Board."

have been refused licenses for one reason or another, but also applies to taxi drivers who have been charged with violating PSC Regulations, such as petitioner.

We are not faced in this case, however, with an access problem of constitutional proportions because petitioner was well aware of the contents of the file, including both the complainant's name and work address and the details of the incident. The fact that petitioner was *read* the complaint in the file instead of being allowed himself to review the file did not prejudice him.

 Accordingly, we are satisfied that the Board's order must be upheld.[12]

*So ordered.*

12. Petitioner argues that the Acting Chairman of the Board at the hearing had a clear conflict of interest in the instant case since he was an officer of the Capital Cab Company and several drivers of that company were involved in the alleged kickback scheme with the Mayflower's doorman. We deem this contention without merit since we conclude the Board was correct in ruling that the matter was wholly collateral to the particular issue before the Board in this case.

Petitioner also argues that the Acting Chairman had already made up his mind concerning the outcome of the case halfway through the hearing because of a colloquy with petitioner at which the Chairman said, "You may not have to worry . . . after today. Go ahead." Considered in context this comment was not evidence of prejudgment.