**Ehrahim BABAZADEH, Petitioner,**

v.

**DISTRICT OF COLUMBIA HACKERS' LICENSE APPEAL BOARD,**
Respondent.

No. 12499.

District of Columbia Court of Appeals.

Submitted May 24, 1978.

Decided Aug. 16, 1978.

---

Patrick J. Christmas, Washington, D. C., for petitioner.

Leo N. Gorman, Asst. Corp. Counsel, Washington, D. C., with whom John R. Risher, Jr., Corp. Counsel, and Richard W. Barton, Deputy Corp. Counsel, Washington, D. C., were on the brief, for respondent.

Before NEWMAN, Chief Judge, GALLAGHER, Associate Judge, and HOOD, Chief Judge, Retired.

---

1. 34 DCRR 5.4 Special Edition provides, "The Board shall, in any case in which a party represents himself, take such action as may reasonably be necessary to insure that all information material to the party's case, is developed to the fullest possible extent commensurate with the Board's function as an impartial hearing body."

**PER CURIAM:**

Petitioner seeks review of an order of the District of Columbia Hackers' License Appeal Board (the Board) suspending his hacker's license for a period of 30 days. Petitioner claims that the suspension proceeding violated his procedural rights provided by the District of Columbia Administrative Procedure Act (DCAPA), D.C.Code 1973, § 1–1501 *et seq.* Petitioner also argues that the Board failed to follow its own rule of procedure which mandates special procedures for *pro se* litigants. 34 DCRR 5.4 Special Edition.[1] We agree with both claims and vacate the suspension order.[2]

The incident leading to petitioner's suspension occurred on February 24, 1977 when petitioner picked up Ms. Geraldine Hooks in the area of 4th and M Streets, S.W. at a time close to 4:00 p. m., when special rush hour cab fares take effect. Petitioner drove Ms. Hooks to her place of employment in the 1800 block of 14th Street, N.W. and upon arrival, requested that Ms. Hooks pay the rush hour fare. She refused, claiming that she had entered the taxi before the 4:00 p. m. deadline. After angry words were exchanged, petitioner threw her change on the rear floor of the cab. Ms. Hooks then collected her change and left the cab. Four days later she submitted a written complaint to the Office of Public Vehicle Services of the District of Columbia Department of Transportation.

Following receipt of the complaint by the Public Vehicle Division of the D.C. Department of Motor Vehicles (DMV), petitioner was ordered to report to that office and bring his manifest for the dates February 20 through February 29, 1977. The letter requiring petitioner to report to the DMV did not indicate that a complaint had been filed. At the DMV, petitioner was questioned about the complainant's charges and submitted the following written statement:

2. Because of this result, we have no need to address petitioner's other arguments concerning the appropriateness of the Board's findings and conclusions.

On Feb. 24, 1977 at four o'clock I was coming down M St at 4 to M S W I was stopped . . . a lady came in She said she was going to 1830 14th St N.W. When I got there was 410 I asked her 215 she refuse to pay and pay me 1.65 and left.

E. Babazadeh

At that time, petitioner requested the name of the complainant in order to investigate the charge, but his request was denied.

By letter dated June 2, 1977, petitioner was ordered to appear before the Hackers' License Appeal Board "to show cause why [his] public vehicle license should not be suspended or revoked . . . ." The notice contained the time and place of the hearing, as well as the following:

It is alleged that on February 24, 1977 at approximately 3:45 near 4th and M Streets, S.W., Washington, D.C. you did operate a public vehicle in violation of 14 D.C.R.R. 305.1, 355.3 and 365.1.

To Wit: On the above date and location you did attempt to overcharge a passenger accepted in your public vehicle at which time your conduct was improper and you did further operate your public vehicle in an unsafe manner.

. . . . .

Failure to appear on the date and at the time above mentioned will not preclude proper action in respect to the suspension or revocation of your license.

. . . . .

This is to advise you that you are entitled to be represented by counsel, present witnesses, or both, if you desire to do so.

You are directed to produce your manifest for the above-mentioned date and time at the time of hearing. You are further directed to bring your hacker's identification license with you at the time of hearing.

Nowhere did the notice of hearing name the complainant, nor did it indicate whether petitioner was entitled to learn of complainant's identity or inspect his file prior to the hearing. Petitioner did not, in fact, thereafter request disclosure of the complainant's name.

At the hearing, Ms. Hooks testified in support of her complaint. She recounted the incident, noting that she entered the cab at about 3:45 p. m., fifteen minutes before the rush hour fares became applicable.

Appearing *pro se*, Mr. Babazadeh testified on his own behalf *inter alia* that he picked up the complainant at 4:00 p. m. He stated that it would have been impossible for him to have picked up the complainant at 3:45 p. m. as alleged because he had been at his regular job at the Metropolitan Police Department Communications Center (4th and E Streets, N.E.) until 3:30 p. m., from which he drove to the Potomac Cab Company, located at South Capitol and P Streets, to buy an operating sticker. In addition he offered explanations for his other conduct which complainant considered abusive.

In its opinion, issued July 11, 1977, the Board found that petitioner picked up the complainant at 3:45 p. m. and thus that the correct fare was the non-rush hour charge. In addition, the Board found that petitioner conducted himself improperly in calling the complainant an offensive name and found that petitioner's manifest was improper in that it did not include the required information. The Board concluded that (1) petitioner attempted to overcharge a passenger in violation of 14 DCRR 305.1; (2) petitioner's conduct was improper in violation of 14 DCRR 350.3; and (3) petitioner failed to maintain a proper manifest in violation of 14 DCRR 355.1. The Board ordered that his license be suspended for 30 days. Following denial of a motion for rehearing and reconsideration, petitioner sought review in this court, pursuant to D.C.Code 1973, § 1–1510.

In this court, petitioner's claims center on the Board's failure to disclose the name of the complainant prior to the hearing. He argues that because he did not know the identity of the complainant, he could not adequately prepare to defend against her charges. His contentions can be summarized: Had he known complainant's name and work address, he could have checked

her employer's records to determine what time she had arrived at work on the day of the incident. This information, coupled with evidence of the normal driving time for the trip in question, would have enabled him to effectively cross-examine the complainant and to refute her version of the incident. Thus, he argues that the Board's failure to disclose the complainant's identity denied him reasonable notice of the issues to be heard in violation of D.C.Code 1973, § 1–1509(a) and resulted in a denial of the opportunity to effectively cross-examine in violation of D.C.Code 1973, § 1–1509(b). He further contends that the Board's failure to disclose complainant's identity was in violation of its own rule of procedure, 34 DCRR 5.4 Special Edition, which requires that when a party appears *pro se* the Board must "take such action as may reasonably be necessary to insure that all information material to the party's case [be] developed to the fullest possible extent. . . ."

The government does not respond directly to petitioner's claims. Rather, it argues that petitioner's request for disclosure was made before formal charges were brought, at a time when disclosure of complainant's name and address was not mandated by either fundamental notions of fairness or the notice provisions of the DCAPA. The government claims that only after formal charges were filed did petitioner have a right to inspect the complaint file. Thus, the government contends, since petitioner made no request to inspect after receiving notice of the formal charges, he effectively waived his right to the information.

Our evaluation of petitioner's claims must begin by an examination of the applicable statutory and regulatory procedures. This court has jurisdiction to review decisions of the Board in contested cases pursuant to the DCAPA, D.C.Code 1973, § 1–1510. *Proctor v. Hackers' Board*, D.C.App., 268 A.2d 267 (1970). In conducting such review, we must be satisfied that the Board has complied with the procedural requirements of the DCAPA, including those provisions mandating that a participant be afforded reasonable notice of the issues involved, D.C.Code 1973, § 1–1509(a), and

"the right . . . to conduct such cross-examination as may be required for a full and true disclosure of the facts." D.C.Code 1973, § 1–1509(b).

■ Discerning the regulations applicable to the suspension or revocation of a hacker's license is somewhat more complex. Pursuant to 14 DCRR § 300.6, a license may be suspended or revoked for violations of various provisions of the Taxicab Regulations promulgated by the Public Service Commission. *See* 14 DCRR §§ 305–355. It is clear that the Board has authority to suspend or revoke a license. *See* Introduction to 34 DCRR Special Edition ("[The Board] has among its functions and responsibilities to determine if a complaint against a licensed individual is valid and, if such action is justified, to suspend or revoke such license.") However, the regulations specifying Board procedures, set forth in Title 34 Special Edition of the D.C. Rules and Regulations apply on their face only to appeals from denials of license applications and not to suspension or revocation proceedings. 34 DCRR § 1.1 *et seq.* Special Edition.

This court has previously noted the loophole in the Hackers' Board regulations in *Pillis v. District of Columbia Hackers' License Appeal Board*, D.C.App., 366 A.2d 1094 (1976). At issue in that case was the question of whether a hacker whose license has been suspended was entitled to access to a file prepared before hearing by the Board. The applicable regulations, identical to those in the instant case, on their face applied solely to appeals from denials of hack licenses and provided the right to inspect one's appeal file. 34 DCRR § 4.3 Special Edition. There, the Corporation Counsel conceded that the procedures set out in Title 34 apply "not just to applicants for hack licenses who have been refused licenses for one reason or another, but also appl[y] to taxi drivers who have been charged with violating PSC Regulations . . . ." *Pillis, supra* at 1097–98. Hence, the Corporation Counsel admitted that pursuant to 34 DCRR § 4.3 Special Edition, the petitioner therein should have

been permitted to inspect his file before the hearing.

 We take this opportunity to reiterate the principle implicit in *Pillis, supra* : In the absence of regulations directed specifically to license revocation proceedings, those regulations set forth in 34 DCRR § 1.1 *et seq.* Special Edition govern revocation proceedings as well as appeal proceedings. This must be so consistent with the notion that those threatened with suspension or revocation of a governmentally bestowed license are entitled to at least the same quantum of procedural protections as are those appealing from the denial of a license. *See* Friendly, "*Some Kind of Hearing,*" 123 U.Pa.L.Rev. 1267, 1296 (1975).

Therefore, in the instant case, the applicable regulations are those set forth in Title 34 Special Edition of the D.C. Rules and Regulations. Two of those are most relevant for our discussion here—34 DCRR § 4.3 Special Edition,[3] providing the right to inspect one's file, and 34 DCRR § 5.4 Special Edition,[4] mandating that the Board assist an unrepresented party to secure all necessary information.

As the facts make clear, petitioner here requested the name and address of complainant when he was first ordered to report to the DMV during the initial investigation of the complaint. After the investigating officer denied petitioner's request, petitioner did not renew his request for the identifying information. Even after the formal charges were filed, petitioner did not again seek the information from the charging officials.

The government contends that it had no obligation to turn over the requested information until formal charges were filed against petitioner. Second, it argues that petitioner's failure to renew his request and thereby seek access to the Board's file on his case during the pendency of the *formal* charges amounted to a waiver.

"[W]here governmental action seriously injures an individual, and the reasonableness of the action depends on fact findings, the evidence used to prove the Government's case must be disclosed to the individual so that he has an opportunity to show that it is untrue." *Greene v. McElroy*, 360 U.S. 474, 496, 79 S.Ct. 1400, 1413, 3 L.Ed.2d 1377 (1959). Under most circumstances inspection of the file will ensure that the charged party receives the requisite notice of the charges, *i. e.*, notice "reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action . . . ." *Armstrong v. Manzo*, 380 U.S. 545, 550, 85 S.Ct. 1187, 1190, 14 L.Ed.2d 62 (1965). Moreover, inspection should enable the charged party to be fully aware of the scope of the charges, ensuring that the suspension hearing will provide more effective opportunity to be heard "in a meaningful manner." *Id.* at 552, 85 S.Ct. 1187.

 Principles of due process, inherent in the DCAPA requirements of notice and an opportunity to confront adverse witnesses, as well as in the Board's own regulations, force us to reject the second prong of the government's argument. We are of the view that the opportunity to inspect one's file, set forth in 34 DCRR 4.3 Special Edition, and the concomitant opportunity to secure information vital to a hacker's own investigation and defense are essential if hacker suspension proceedings are to comport with due process.

 The opportunity to inspect one's file afforded by 34 DCRR § 4.3 Special Edition provides an empty right if the charged party is unaware of his right to access. Therefore, consistent with the requirement that a governmentally conferred benefit be withdrawn only after due process of law, we hold further that the Board has the obligation to notify a charged party of his right to inspect his file after formal charges are

---

3. 34 DCRR § 4.3 Special Edition provides, "Inspection of Appeal File. The documents transmitted by the Chief pursuant to Rule 4.1 shall constitute the Appeal File, *which shall be avail-* *able for inspection at the offices of the Board."* (Emphasis added)

4. *See* n. 1, *supra*.

filed but before the date of the suspension hearing.

■ We note that pursuant to its own regulations, the Board has an obligation to assist a *pro se* litigant to obtain "all information material to the party's case . . ." 34 DCRR § 5.4 Special Edition. Thus, especially where the charged party is not represented by counsel, the Board must fashion procedures to insure that the litigant is aware of the full panoply of procedural rights which are his due.

■ It is clear that petitioner here had no notice of his right to inspect his file. Having had his request for information rejected once, petitioner had no reason to believe that a renewed request would result in receipt of the desired information. Thus, we hold that petitioner's failure to renew his request for the complainant's identity does not bar his challenge to the Board's action.

■ In sum, we hold that the Board's suspension order must be vacated since the Board's procedures failed to accord petitioner the procedural protections mandated by both the DCAPA and the Board's own regulations.

*So ordered.*