**M.B.E. INCORPORATED, Petitioner,**

**v.**

**MINORITY BUSINESS OPPORTUNITY COMMISSION OF the DISTRICT OF COLUMBIA, Respondent.**

**No. 83–644.**

District of Columbia Court of Appeals.

Argued March 20, 1984.

Decided Nov. 19, 1984.

Joseph H. Kasimer, Washington, D.C., with whom Gerald L. Elston, Washington, D.C., appeared on the brief, for petitioner.

Edward E. Schwab, Asst. Corp. Counsel, Washington, D.C., with whom Inez Smith Reid, Corp. Counsel, John H. Suda, Principal Deputy Corp. Counsel, Charles L. Reischel, Deputy Corp. Counsel, and Richard B. Nettler, Asst. Corp. Counsel, Washington, D.C., appeared on the brief, for respondent.

Before NEBEKER and FERREN, Associate Judges and SALZMAN, Associate Judge, Superior Court.*

FERREN, Associate Judge:

Petitioner, M.B.E., Incorporated (M.B.E.), challenges a decision of the District of Columbia Minority Business Opportunity Commission (Commission), ruling that M.B.E. does not qualify as a "minority business enterprise" and revoking M.B.E.'s certification to participate in the "sheltered market program" established by the Minority Contracting Act of 1976 (the Act), D.C. Code §§ 1–1141 to –1150.1 (1981 & Supp. 1984). The Commission based its revocation decision on findings (1) that § 3(b) of the Act, as amended, D.C.Code § 1–1142(2) (1981 & Supp.1984), and its implementing regulations are "clear," limiting participation in the sheltered market program to businesses that are more than 50 percent owned and controlled by members of specified minority groups; (2) that M.B.E. failed to comply with these requirements "for substantial periods"; and (3) that M.B.E. "knew or should have known that the composition of its board of directors and the investiture of power" in an outside, nonminority person violated the Act "or would involve a significant risk" of doing so.

Section 9(d)(5) of the Act—the only provision relevant here—authorizes revocation or suspension of certification when a certificate holder willfully fails to comply with a provision of the Act or with a Commission regulation. D.C.Code § 1–1148(d) (1981). We conclude that the Commission's decision contains sufficient findings, supported by substantial evidence, of a willful violation of the Act.

We also reject M.B.E.'s argument that the Commission lacks statutory authority to revoke a sheltered market program certification retroactively, to the date on which grounds for revocation arose.

■ We further conclude, however, that the Commission failed to place in the administrative record, or to make available to M.B.E. in advance of the revocation decision, at least two sets of materials that apparently were relevant to the Commission proceedings and decision and without which M.B.E. could not adequately defend itself. Because the Commission has discretion to impose a sanction less drastic than revocation, even when it finds a willful violation of the Act, we cannot sustain the revocation order here when materials out-

---

* Sitting by designation pursuant to D.C.Code § 11–707(a) (1981).

side the record may have been relevant to that decision. Accordingly, we must remand this case to the Commission for further proceedings consistent with this opinion.[1]

## I.

On June 29, 1981, M.B.E., a District of Columbia corporation with its principal place of business in Alexandria, Virginia, applied to the Commission for certification to participate in the sheltered market program. A prerequisite for certification is that the applicant be a "bona fide, minority business enterprise." D.C.Code § 1–1148(a)(1) (1981). Section 3(b) of the Act defines "minority business enterprise" as a business "of which more than 50 percent of the ownership and control is held by individuals who are members of a minority, and of which more than 50 percent of the net profit or loss accrues to members of a minority." D.C.Code § 1–1142(2) (1981).[2]

On March 2, 1982, the Commission determined that M.B.E. qualified as a minority business enterprise and certified M.B.E. to participate in the sheltered market program for a two-year period. This certification authorized M.B.E. to enter bids for "general contracting" work on sheltered market projects.

In July 1982, M.B.E. entered a bid on a sheltered market project referred to as the Crosstown Watermain project. The District of Columbia Department of Environmental Services (DES) reviewed M.B.E.'s qualifications to do the required work and determined that M.B.E.'s bid was the lowest received.

Before a contract was awarded on the project, however, the director of DES sent a memorandum to the City Administrator, calling his attention to the fact that two of M.B.E.'s three corporate officers were nonminorities. The memorandum further stated that "[t]here is talk in the industry" that M.B.E. is not a bona fide minority-controlled company, but instead operates under the control of a larger nonminority firm, Shirley Contracting. On the basis of this information, the memorandum recommended that the Commission re-examine M.B.E.'s corporate structure and "reconfirm that they are qualified" as a minority business enterprise, before any action was taken on M.B.E.'s bid.

Pursuant to this recommendation, the Commission instituted an informal compli-

---

1. M.B.E. also argues that the Commission should be estopped from revoking M.B.E.'s certification because M.B.E. acted in good faith reliance on Commission actions. Because this issue may be affected by the development of the record and the issuance of additional findings on remand, we do not address it here.

We dispose of one final argument raised by M.B.E. without extensive discussion. M.B.E. urges this court to reverse the revocation decision because more than 90 days passed between the date on which the Commission adopted formal charges against M.B.E. and the date of the final decision. The Commission's own regulations provides: "The final decision of the Commission must be issued in writing within ninety (90) days of the date on which charges were adopted...." 27 DCMR § 708.13 (1984). We construe this 90-day time limit to be directory, rather than mandatory or jurisdictional. *See Vann v. District of Columbia Board of Funeral Directors and Embalmers*, 441 A.2d 246, 247–48 (D.C.1982) (construing regulation which stated that agency "shall render its decision 'as soon as practicable, but not later than ninety days after the date the hearing is completed,'" to be direc-

tory, not mandatory or jurisdictional). Accordingly, the Commission's decision should be set aside only if the prejudice to M.B.E. caused by the delay outweighs the interests of the public in allowing the agency to act after the established time period has elapsed. *See id.; JBG Properties, Inc. v. District of Columbia Office of Human Rights*, 364 A.2d 1183, 1184–86 (D.C.1976). Our review of the facts in this case, combined with the significant public interest in limiting the benefits of participation in the sheltered market program to genuine minority business enterprises, convinces us that the Commission's delay in issuing its decision does not serve as an independent basis for reversing the decision here.

2. At the time of the events relevant to this case, the Act defined the term "minority" to include "Black Americans; Native Americans; [and] Hispanic Americans with origins in Central and South America, Mexico, and the Carribbean." D.C.Code § 1–1142(1) (1981). This definition recently has been amended to include "Asian Americans" and "Pacific Islander Americans." D.C.Code § 1–1142(1) (Supp.1984).

ance review of M.B.E. on September 27, 1982. After notification, M.B.E. submitted a number of documents in response to Commission requests.

At a meeting on November 9, 1982, the Commission voted to adopt formal charges against M.B.E. and to initiate a formal certification revocation proceeding. A "draft" version of a letter of notice for this formal proceeding indicates that the Commission based its decision to adopt formal charges, at least in part, on communications received from the Maryland Department of Transportation. The Maryland agency, which had recently denied M.B.E.'s application for certification as a minority contractor in Maryland, informed the Commission that M.B.E. was a "minority front" for Shirley Contracting, the same nonminority firm which DES had mentioned. This draft notice was never sent to M.B.E.

Instead, the Commission sent M.B.E. a notice of proposed revocation on November 26, 1982 simply stating that the Commission had received information suggesting that M.B.E. was in violation of the minority ownership and control requirements of § 3(b) of the Act. After M.B.E. had responded with materials reflecting corporate actions by its directors and shareholders, the Commission sent a second notice of revocation superseding the first one. This notice, which also charged a § 3(b) violation, specified allegations of nonminority control of M.B.E.'s board of directors. It also questioned a "corporate resolution empowering Mr. Robert Post, a non-minority, and owner of Shirley Contracting Corporation with all the vestiges of control over the management and affairs of MBE, Inc." The notice informed M.B.E. of its right to a hearing before the Commission to contest the proposed revocation of certification.[3]

The Commission held a hearing on January 5, 1983, at which both Commission staff and M.B.E. presented evidence. On June 8, 1983, the Commission issued its decision revoking M.B.E.'s certification to participate in the sheltered market program effective, retroactively, to March 2, 1982. The decision expressly relied not only on the submissions and argument by M.B.E. but also on "information supplied by the Department of Environmental Services." The decision made no mention, however, of the information which MBOC received from the Maryland Department of Transportation.

The Commission found that, although M.B.E.'s initial application for certification listed two minorities and one nonminority as members of its board of directors. M.B.E.'s Articles of Incorporation listed four directors, two minorities and two nonminorities. The Commission also found that at no point between June 29, 1981—the date of M.B.E.'s initial application—and June 11, 1982, did minority individuals have more than 50 percent of the voting power on M.B.E.'s board of directors. These findings have substantial support in the record from M.B.E.'s own submissions.

The Commission also found that, despite the fact that the members of M.B.E.'s board of directors and its corporate officers had changed on several occasions—both while M.B.E.'s application was pending before the Commission and after issuance of certification—M.B.E. had "failed to notify [the Commission] about any of the changes in the corporation's organization" until after the Commission initiated its informal compliance review. The record also supports this finding.

Finally, the Commission found that a March 9, 1981 resolution of M.B.E.'s board

---

**3.** In addition to omitting any mention of the information received from the Maryland Department of Transportation, neither the first nor the second notice sent to M.B.E. included any reference to two additional charges listed in the draft notice:

    fraud or deceit in obtaining certification including the furnishing of substantially inaccu-

rate or incomplete ownership information in connection with the application;

failure to report changes in the status or activities of the business entity or its minority membership....

These charges correspond to the grounds for revocation of certification listed in §§ 9(d)(1), (2), and (3) of the Act. D.C.Code § 1–1148(d).

of directors named Robert Post, the president of Shirley Contracting—and a nonminority—as a "friend of the corporation." This resolution, which had not been disclosed in M.B.E.'s application for certification, conferred on Post all the powers given to M.B.E.'s officers, including the power "to borrow money and incur liabilities on behalf of M.B.E., Inc., to sell or discount bills and accounts receivable ... to enter into, make, sign and deliver assignment[s] ... promissory notes ... and other obligations of this Corporation for such amounts, such time, at such rate of interest or discount, and containing such terms and provisions" as Post deemed proper. The record supports this finding that an extremely broad grant of corporate powers had been implemented almost four months before M.B.E. applied for certification on June 29, 1981, and remained in effect until December 2, 1982.

Based on these findings, the Commission concluded that M.B.E. knew or should have known that it had violated § 3(b) of the Act for substantial periods. More specifically:

> MBOC concludes that from March 2, 1982 and for substantial periods following March 2, 1982 through December 2, 1982, the minority shareholders and directors of MBE, Inc. did not have bona fide control of the company within the meaning of Section 3(b), D.C.Law 1–95, as amended. Accordingly, we conclude that for such periods MBE, Inc. was not qualified for certification as a minority business enterprise under the provisions of the Act. The Commissioner further concludes that the minority control requirements of Section 3(b), D.C.Law 1–95, as amended (as well as their purpose) and the MBOC's published implementing regulations are clear. MBE, Inc. therefore knew or should have known that the composition of its board of directors and the investiture of power in Robert Post was a violation of the minority control requirements of the Act or would involve a significant risk of the substantial violations that occurred.

Because M.B.E. did not meet the qualifications for a minority-controlled business under § 3(b) of the Act, even at the time it received certification, the Commission ordered that "the certification granted M.B.E., Inc. by the [Commission] on March 2, 1982, is hereby revoked as of that date."

After the issuance of MBOC's decision, M.B.E. filed an action in Superior Court asking that the court order the Commission to disclose certain documents pursuant to the Freedom of Information Act. D.C. Code § 1–1521 et seq. (1981). In particular, M.B.E. sought disclosure of materials sent to the Commission by DES and by the Maryland Department of Transportation. Although there are references to these materials in the administrative record compiled by the Commission, the materials themselves were not part of the record, and M.B.E. maintained that it was never given access to them. In response to M.B.E.'s Superior Court action, the Commission produced the requested materials, and they now have been filed as part of the record on appeal.

## II.

M.B.E. argues that the Commission's decision does not contain findings adequate to support revocation of its certificate to participate in the sheltered market program. We disagree.

Section 9(d) of the Act authorizes the Commission to "revoke or suspend the certificate of any firm or joint venture registered hereunder who is found guilty of" any one of five specified types of conduct, D.C.Code § 1–1148(d):

(1) Fraud or deceit in obtaining the registration;

(2) Furnishing of substantially inaccurate or incomplete ownership or financial information;

(3) Failure to report changes which affect the requirement for certification;

(4) Gross negligence, incompetence, financial irresponsibility, or misconduct in the practice of his profession; or

(5) Willful violation of any provision of this subchapter, or regulations....

■ The Commission's findings of fact include grounds for revoking certification based on §§ 9(d)(2) and (3), which were specified in the draft notice never sent to M.B.E. *See* note 3 *supra.* However, because the Commission never provided M.B.E. with notice that it planned to consider charges based solely on these grounds for revocation, they cannot serve as the basis for decision. D.C.Code § 1–1148(e) (1981); 27 DCMR § 706.2 (1984); *see* D.C.Code § 1–1509(a) (Supp.1984). A respondent is entitled to be "fully aware of the scope of the charges," in order to have an "effective opportunity to be heard." *Babazadeh v. District of Columbia Hackers' License Appeal Board,* 390 A.2d 1004, 1008 (D.C.1978).

■ Accordingly, because the only properly-noticed charge sustained by the Commission was that M.B.E. had violated § 3(b) of the Act, the only possible basis for revocation is § 9(d)(5): "Willful violation of any provision of this subchapter, or regulations adopted pursuant thereto." [4]

■ First, we reject M.B.E.'s argument that the formal notice sent by the Commission was inadequate for failure to specify a charge of willful violation. The facts alleged in the formal notice, clearly showing that M.B.E. filed and maintained false information with the Commission, gave sufficient indication that the Commission charged M.B.E. with knowing and intentional violations of the Act. *See Schwebel*

*v. Orrick,* 153 F.Supp. 701, 705 (D.D.C. 1957) ("it is not essential for a specification of misconduct to include the word 'willful' or 'willfully' in order to charge a willful act if knowledge and intent are implicit in the facts recited"), *aff'd,* 102 U.S.App.D.C. 210, 251 F.2d 919 (per curiam), *cert. denied,* 356 U.S. 927, 78 S.Ct. 716, 2 L.Ed.2d 759 (1958).

■ We conclude, second, that the record substantiates the Commission's findings that M.B.E., in applying for certification, filed false information about the makeup of its board of directors and failed to disclose the controlling authority granted Robert Post, a nonminority. These support the ultimate finding that M.B.E. "knew or should have known" its actions violated § 3(b) of the Act or "would involve a significant risk" of such a violation. Taken together these findings amount to a conclusion that M.B.E.'s noncompliance with § 3(b) was knowing and intentional and thus willful as a matter of law. *See Schwebel,* 153 F.Supp. at 705.

■ The focus for finding willfulness, therefore, is on the intentional performance of a prohibited act—without regard to motive or erroneous advice—not on a specific intention to violate the law. "We think it clear that if a person 1) intentionally does an act which is prohibited,—irrespective of evil motive or reliance on erroneous advice, or 2) acts with careless disregard of statutory requirements, the violation is wilful." *Koden v. United States Department of Justice,* 564 F.2d 228, 234 (7th Cir.1977) (citations omitted) (construing "willful-

4. The Commission argues that a finding of willfulness was not required in this case because it did not base its decision on § 9(d) of the Act. Citing *American Combustion, Inc. v. Minority Business Opportunity Commission,* 441 A.2d 660, 670 (D.C.1982), the Commission maintains that § 10(k) of the Act, which directs the Commission to "[r]eview and determine the continued eligibility of contractors certified by the Commission," D.C.Code § 1–1149(11) (1981 & Supp. 1984), implicitly empowers the Commission to revoke certification for a violation of § 3(b), regardless of whether such violation was willful, negligent, or completely beyond the certificate holder's control. In *American Combustion, Inc.,*

441 A.2d at 670 & n. 12, we held that if the minority business partner in a joint venture loses its certification, then the Commission may rely on § 10(k), D.C.Code § 1–1149(11), automatically to revoke the joint venture's certification, without having to proceed separately against the joint venture under § 9(d), D.C.Code § 1–1148(d). Because we conclude the Commission properly found that M.B.E. had willfully violated § 3(b), as amended, D.C.Code § 1–1142(2), we do not consider whether § 10(k) is available for revocation proceedings that do not concern a joint venture whose minority partner has lost its certification.

ness" exception under the Federal Administrative Procedure Act, 5 U.S.C. § 558(c) (1982)). There is no evidence tending to show that M.B.E.'s erroneous filings with the Commission were unknowing or unintentional. Nor does the fact that M.B.E. relied on advice of counsel in granting controlling authority to Robert Post excuse that knowing and intentional act. *Id.*

### III.

■ Next, we address M.B.E.'s argument that the Commission lacks statutory authority to revoke a certification retroactively, to the date on which a violation of § 9(d) first occurred. M.B.E. apparently seeks to establish that MBOC has no power to disqualify M.B.E.'s bids on sheltered market projects that were made before the date of the Commission's revocation decision. We reject this position.

Section 9(e) of the Act provides that if, after a hearing, the Commission upholds charges against a certificate holder, it "shall revoke the registration of the accused, or take such other action as it deems appropriate." D.C.Code § 1–1148(e) (1981); *see* § 9(d), *id.* § 1–1148(d) (Commission "may revoke or suspend" certification). We read this broad grant of power to authorize the Commission to fashion a wide range of sanctions in order to effectuate the Act's intended purpose "to achieve the goal of equal opportunity" for minority-controlled businesses. D.C.Code § 1–1141(6). This legislative purpose would be frustrated if the Commission were precluded from denying certificate holders, who had violated the Act and were not minority-controlled, the benefits of the sheltered market program for the entire period of the violation. Accordingly, we hold that when the Commission finds a violation under § 9(d) of the Act, it has discretion to revoke the certificate retroactively to the date on which the grounds for revocation first arose.

### IV.

Finally, M.B.E. asks us to set aside the revocation decision because the Commis-

sion relied on materials outside the administrative record: the DES memorandum and communications from the Maryland Department of Transportation.

■ The Commission's regulations require that revocation decisions "shall be based upon the record of the hearing." 27 DCMR § 708.12 (1984). This regulation simply reinforces the general requirement of the District of Columbia Administrative Procedure Act that no decision or order may be issued in a contested case "except upon consideration of [the] exclusive record" compiled during the administrative hearing. D.C.Code § 1–1509(c) (1981). The Commission's brief concedes "that certain materials were not included in the record," but argues that, because these materials have now been provided to M.B.E. and to this court, "[t]he issue has been removed from the case."

■ The Commission's response reflects a lack of understanding about the dual purposes of on-the-record administrative decision-making. Although an agency's post-hearing supplementation of the record on review accommodates one of the purposes—to facilitate judicial review—it does nothing to further the fundamental purpose of the on-the-record requirement: to assure the parties an adequate opportunity, at the administrative proceeding, to challenge and respond to the evidence which forms the basis of the agency's decision. *See* D.C.Code §§ 1–1149(e), –1509(b) (1981); 27 DCMR § 708.4 (1984). This court has held it is "fundamental that the mind of the decider should not be swayed by evidence which is not communicated to both parties and which they are not given an opportunity to controvert." *Quick v. Department of Motor Vehicles*, 331 A.2d 319, 323 (D.C.1975); *see Committee for Washington's Riverfront Parks v. Thompson*, 451 A.2d 1177, 1182 (D.C.1982); *Babazadeh*, 390 A.2d at 1008; *Citizens Association of Georgetown, Inc. v. District of Columbia Alcohol Beverage Control*

*Board,* 288 A.2d 666, 670 (D.C.1972). Even if the decision-maker does not intend to rely on a particular *ex parte* communication, such a communication should be made part of the record—and the parties given an opportunity to respond to it—whenever it is relevant to the facts of the case and the statutory criteria to be applied. *See Quick,* 331 A.2d at 323; *Citizens Association of Georgetown, Inc.,* 288 A.2d at 670.

The Commission's decision revoking M.B.E.'s certification expressly relies on "information supplied by the Department of Environmental Services." The draft notice of formal charges, moreover, makes it clear that the Commission also received and relied on similar information from the Maryland Department of Transportation in deciding to institute the formal revocation proceedings.[5] The Commission concedes that these materials were not made part of the record during the revocation hearing, and M.B.E. maintains that it never had an opportunity to controvert their contents during the Commission hearing.

█ Given the fact that the Commission either "may revoke or suspend" a certification, D.C.Code § 1–1148(d) (1981), "or take such other action as it deems appropriate," *id.,* § 1–1148(e), we cannot sustain the most drastic sanction, revocation, possibly based to some extent on evidence outside the record, even though we sustain the Commission's finding that M.B.E. willfully violated the Act. It is theoretically possible (even if not otherwise indicated) that the Commission would have imposed a lesser sanction if M.B.E. had been permitted to meet allegations, available to the Commission, that were undisclosed at the time of the hearing. Accordingly, we reverse and remand the case to the Commission, which shall reopen the record in order to give M.B.E. an opportunity to contest any materials relevant to the decision that were not available to M.B.E. at the first hearing.

5. What is significant is not the draft notice as such—which apparently was prepared by a Commission staff member and rejected by the Commission—but the conceded correctness of the information it contains: that the Commission had received and considered matters outside the record and undisclosed to M.B.E.

The Commission shall then issue an order, in its discretion, based on all the facts of record.

*Reversed and remanded for further proceedings.*