646 A.2d 1007 (1994)
JOEL TRUITT MANAGEMENT, INC., Petitioner,
v.
DISTRICT OF COLUMBIA COMMISSION ON HUMAN RIGHTS, Respondent.
No. 93-AA-1225.
District of Columbia Court of Appeals.
Argued April 21, 1994.
Decided August 25, 1994.
Linda Hanten, Washington, DC, for petitioner.
*1008 Juleen E. Savarese, Sp. Asst. Corp. Counsel, with whom John Payton, Corp. Counsel at the time the brief was filed, and Charles L. Reischel, Deputy Corp. Counsel, Washington, DC, were on the brief, for respondent.
Before FERREN[*] and FARRELL, Associate Judges, and PRYOR, Senior Judge.
PER CURIAM:
The District of Columbia Commission on Human Rights (the Commission) assessed $35,000 in damages against petitioner, Joel Truitt Management, Inc., on the ground that petitioner had violated the District of Columbia Human Rights Act[1] by refusing to perform needed plumbing services for a tenant in a building managed by petitioner because the tenant had AIDS. Petitioner challenges the sufficiency of the evidence that it engaged in the forbidden discrimination (specifically the Commission's finding that it failed to show a "business necessity" for the discriminatory conduct), and claims as well that the award of damages was excessive. We affirm.

I.
Petitioner was hired to manage the building in question in 1991, a position it held until 1992. The complainant-tenant, J. Corwin Condren, occupied a rental apartment in the building during petitioner's period of management. Condren had been diagnosed as having AIDS in 1990. On an occasion prior to December 19, 1991, an employee of Bauer Plumbing Company, the building's regular plumber, arrived at the building to perform repairs, but after witnessing an argument between two residents he left the job site. When Fred Bauer called petitioner's agent, Beverly Whiting, to tell her that his plumber had left because of the altercation, she stated that Mr. Condren was probably involved, that he might have AIDS, and that "she did not want anyone from Bauer Plumbing going into [his] apartment."
On December 19, 1991, an employee of Bauer Plumbing Company arrived at the building to make repairs. After being told that the repairs were to be made in Mr. Condren's unit, the plumber stated that he would not enter the unit without an assurance of medical safety and left the building, returning to Bauer Plumbing. Joseph Bauer called Beverly Whiting and told her that because Condren had AIDS, his employees would not enter the apartment unit unless they were given a certificate of assurance stating there was no danger of contracting AIDS. That same day (December 19) petitioner sent the following memorandum to Condren:
It is a well known fact that you have told the world that you have AIDS. Trades people have told us they are afraid to enter your apartment. Please provide certification from a qualified health authority that it is safe to enter your apartment, and that there is no danger of getting the disease and that the apartment is sanitary (no needles, etc. on which they can get AIDS). Thank you. JTM
Thereafter, Condren filed a complaint of discrimination with the District of Columbia Department of Human Rights and Minority Business Development, alleging that petitioner had engaged in an unlawful discriminatory practice by refusing to repair his rental unit because of his physical handicap, in violation of D.C.Code § 1-2515(a)(4) (1992). The Department determined that there was probable cause to support this claim and certified the matter to the Commission for a hearing. Following an evidentiary hearing, the Commission found that petitioner, without justification, had violated the statute "by restricting or impeding repairs to [Condren's] apartment on the basis of his physical handicap (AIDS)." The Commission ordered petitioner to pay Condren $35,000 in compensatory damages.

II.
Under the District of Columbia Human Rights Act, it is an unlawful discriminatory *1009 practice for the owner or managing agent of a property "to refuse or restrict facilities, service, repairs or improvements for a tenant or lessee" on the basis of, inter alia, the tenant's physical handicap. D.C.Code § 1-2515(a)(4). Acquired Immune Deficiency Syndrome (AIDS) is a condition falling within the definition of "physical handicap."[2] Not every practice having a "discriminatory effect" is unlawful, however; any such practice that "would otherwise be prohibited by this chapter shall not be deemed unlawful if it can be established that such practice is not intentionally devised or operated to contravene the prohibitions of this chapter and can be justified by business necessity." Id., § 1-2503(a). But the "business necessity" exception is itself limited, as it is
applicable only ... where it can be proved by a respondent that, without such exception, such business cannot be conducted; [and] a "business necessity" exception cannot be justified by the facts of increased cost to business, business efficiency, the comparative characteristics of 1 group as opposed to another, the stereotyped characterization of 1 group as opposed to another, and the preferences of co-workers, employers, customers or any other person.
Id.
The Commission found that petitioner's December 19 memorandum to Condren "involved[d] facial discrimination" on the basis of Condren's physical condition, viz., an "implied[d]... threat that repair people would not perform any repairs in complainant's apartment without ... [the] certification" demanded. The Commission also found that petitioner had "not provided any evidence which demonstrates that it had a reasonable basis to believe that complainant posed a threat to repair people because of his AIDS condition." Petitioner does not challenge the latter finding and, as to the former, does not dispute that there was a discriminatory refusal to provide services. Petitioner contends, however, that the discriminator was Bauer Plumbing: "the memorandum was merely an attempt to notify Mr. Condren of Bauer's requirement" (emphasis added), and was motivated by petitioner's desire "to facilitate the provision of services to Mr. Condren."
The Commission correctly saw that this assertion boiled down to an unjustified reliance on the statutory "business necessity" exception. First, as the Commission pointed out, Bauer Plumbing Company was petitioner's agent in making authorized repairs to the rental units in question, and the exception, by its terms, could not be invoked to insulate petitioner from the bias or "preferences of co-workers, employees, customers or any other person." § 1-2503(a). Moreover, the Commission pointed to the "evidence in the record"i.e., Beverly Whiting's earlier instruction that Bauer Plumbing employees were not to enter Condren's unit"which indicates that the idea of keeping repair people away from complainant's apartment may have originated with [petitioner]." In its brief petitioner cites to the Commission's acknowledgment that petitioner "was compelled to continue using Bauer Plumbing because [the ownership of the building] was in debt, thus causing difficulty in retaining another plumbing company."[3] But, as the Commission replies in its brief, a mere "difficulty" in conducting a business by non-discriminatory means does not satisfy the business necessity exception; it must "be proved... that, without such exception, such business cannot be conducted. . . ." Id. As the Commission reasons:
[Petitioner] did not . . . show that it contacted any other plumbing companies in an attempt to hire another company to provide the needed repairs to Mr. Condren's apartment. Nor did [petitioner] even attempt the relatively costless approach of attempting to educate Bauer Plumbing *1010 about the difficulty of "[contracting] the disease."
In sum, the record provides ample factual support for the Commission's rejection of petitioner's reliance on the business necessity exception. See D.C.Code § 1-1510(a)(3)(E); Greater Washington Business Ctr. v. District of Columbia Comm'n on Human Rights, 454 A.2d 1333, 1337 (D.C.1982).[4]

III.
Petitioner further argues that the $35,000 in damages awarded by the Commission was excessive as a matter of law. We may reverse such an award, assuming its factual underpinnings are supported by substantial evidence in the record, § 1-1510(a)(3)(E), only if the agency's action is "[a]rbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law." § 1-1510(a)(3)(A). Under the Commission's Guidelines, "`[t]he natural and unavoidable consequences of any unlawful discriminatory act or practice are personal embarrassment, humiliation, and indignity, and the prevailing complainant shall be entitled to such damages as are proved by competent evidence as defined in § 213.'"[5]Doe v. District of Columbia Comm'n on Human Rights, 624 A.2d 440, 447 (D.C.1993) (quoting 31 D.C.Reg. § 211.1 at 6264 (1984)). In assessing damages, the Commission found that the memorandum written by petitioner was untrue in important respects,[6] that it "was derogatory to complainant because of his AIDS condition," and that as a result it caused him embarrassment, humiliation, and indignity. The finding of untruth is particularly significant because under § 211.2 of the Guidelines, "untrue derogatory statements" made about a complainant may be considered an "aggravating factor[]" in calculating damages. The Commission distinguished its earlier award of lesser damages ($20,000) to a complainant similarly discriminated against because of and unsupported fear of contracting AIDS on the ground that Condren, besides suffering "intangible" harm from the degrading tone of the memorandum, had not received the timely repairs he was entitled to. As we cannot sayborrowing the standard of review of jury awards of damages that the Commission's award of $35,000 was "well beyond the reasonable range ... which might be awarded in a case such as the one at bar," Louison v. Crockett, 546 A.2d 400, 404 (D.C.1988), we find no abuse of discretion in the Commission's determination of damages.
Affirmed.
PRYOR, Senior Judge, dissenting:
I think this case should be remanded so that the Commission, in a concise way, may *1011 explain more fully the procedural framework by which it reached its decision.
It appears the Commission has found, primarily on the basis of a memorandum written by petitioner, that there was "facial discrimination" in violation of the statute. Given the evidence which the Commission heard, it may well be an appropriate ruling. However, there is little explanation regarding the burdens of proof which were applied in this instance. It is, of course, customary in litigation that the obligation to present and rebut evidence be clearly allocated between the parties. Such burdens of persuasion are well understood in traditional civil and criminal cases. In employment discrimination cases, courts have devised procedural rules regulating the order of proof. See McDonnell Douglas Corp. v. Green, 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973). In non-employment assertions of discrimination, as here, the McDonnell Douglas rule required modification to meet different factual issues. Thus, in some instances, courts have referred to "direct evidence" in the case as the basis for decision. The meaning and import of this term in this context is not uniform. In Jackson v. Harvard Univ., 900 F.2d 464, 467 (1st Cir.), cert. denied, 498 U.S. 848, 111 S.Ct. 137, 112 L.Ed.2d 104 (1990), the court opined that, "direct evidence is evidence which in and of itself, shows a discriminatory animus." A similar discussion is found in Tyler v. Bethlehem Steel Corp., 958 F.2d 1176, 1187 (2d Cir.), cert. denied, ___ U.S. ___, 113 S.Ct. 82, 121 L.Ed.2d 46 (1992).
Understanding that our statute is not controlled by federal precedent, nonetheless, there are similarities. In this instance, the Commission essentially held, without elaboration, that the memorandum showed discrimination. Was this document treated as presumptive, thereby shifting the burden to proceed, or was it simply regarded as strong direct evidence?
It is not necessary that the Commission write an elaborate treatise; rather there should be an adequate explanation so an appellate court can trace the path of the decision. See Newsweek Magazine v. District of Columbia Comm'n on Human Rights, 376 A.2d 777, 784 (D.C.1977).
I think that is lacking here and would therefore remand the case.
NOTES
[*] Associate Judge Steadman took part in the oral argument of this case. He subsequently recused, and was replaced by Judge Ferren.
[1] D.C.Code §§ 1-2501, et seq. (1992).
[2] See the Department's 1986 Employment Guidelines, 33 D.C.Reg. 4560 (1986). Petitioner makes no challenge to the Department's authority to classify AIDS as a physical handicap for purposes of the statute.
[3] There was testimony that the building owner's account for past plumbing services had been "turned over [to a collection agency]" for failure to pay some $550 in bills, and that whereas other plumbers thereafter demanded immediate payment, Bauer Plumbing was willing to bill petitioner for services.
[4] Although the Commission began its analysis by noting that it typically "follow[s] the legal framework set out in reviewing cases under Title VII of the Civil Rights Act of 1964," and specifically cited the "mixed motive" anti-discrimination provision of 42 U.S.C. § 2000e-2(m), its decision ultimately did not depend upon a conclusion that petitioner had failed to make the required defensive showing in a dual or mixed motivation case. See, e.g., Holo-Krome Co. v. NLRB, 954 F.2d 108, 110 (2d Cir.1992) (in mixed motive case, "the employer defends on the ground that, even if an invalid reason might have played some part in his motivation, he would have taken the same adverse action in the absence of the invalid reason..."). Petitioner never contended that, absent the AIDS-based discrimination, it still would have refused to perform needed services on Condren's apartment; its defense, as we pointed out in the text, was that Bauer Plumbing was the actual discriminator and that economic circumstances"business necessity"left petitioner no choice but to be the messenger of Bauer's demand for the health "certification." The Commission rejected this defense by straightforward application of the statutory exception, thus relieving us of any need to plumb the complexity of mixed motive cases under federal law, including various interpretations of the complainant's asserted burden of proving discrimination by "direct evidence." Compare, e.g., Jackson v. Harvard Univ., 900 F.2d 464, 467 (1st Cir.), cert. denied, 498 U.S. 848, 111 S.Ct. 137, 112 L.Ed.2d 104 (1990), with Caban-Wheeler v. Elsea, 904 F.2d 1549, 1555 (11th Cir.1990).
[5] Section 213.4 reads in pertinent part: "Any award of damages ... under ... § 211 ... of these guidelines shall be made only upon reliable and probative evidence that will permit the Commission to ascertain a reasonable basis for assessing the amount of the damages. . . ."
[6] Specifically, the Commission found no record support other than Joel Truitt's uncorroborated, and internally conflicting, testimony for the assertion that "[i]t is a well known fact that you have told the world that you have AIDS," and similarly found no basis for the implied assertion in the memorandum that Condren kept hypodermic needles in his apartment or otherwise allowed "[un]sanitary" conditions to exist there.