**NATURAL MOTION BY SANDRA, INC.,**
**and Sandra U. Butler, Petitioners,**

**v.**

**DISTRICT OF COLUMBIA COMMIS-**
**SION ON HUMAN RIGHTS, Re-**
**spondent,**

**Estate of Richard Andre Hamilton,**
**Intervenor.**

**No. 95–AA–1465.**

District of Columbia Court of Appeals.

Argued Nov. 24, 1996.

Decided Jan. 9, 1997.

---

Karen E. McDonald, Washington, DC, for petitioners.

Laura K. McNally, with whom Bruce L. Montgomery, Robert B. Conley, William Michael Quinn, Jr., and David J. Shaffer were on the brief, Washington, DC, for intervenor.

Charles F.C. Ruff, Corporation Counsel, and Charles L. Reischel, Deputy Corporation Counsel, Washington, DC, filed a Statement in Lieu of Brief for respondent.

Before FERREN, FARRELL and REID, Associate Judges.

FARRELL, Associate Judge:

This petition for review by Natural Motion by Sandra, Inc. and Sandra U. Butler (hereafter collectively "Natural Motion") challenges a decision by respondent District of Columbia Commission on Human Rights ("the Commission") which found Natural Motion liable for violations of the Human Rights Act of 1977, D.C.Code § 1–2501 *et seq.* (1992). Concluding that Natural Motion, a hairstyling business, had unlawfully terminated Richard Andre Hamilton from employment on the basis of a disability and personal appearance, the Commission ordered Natural Motion to reinstate Hamilton and pay in excess of $400,000 in back pay, medical expenses, compensatory damages, and a yet to be determined amount of attorney's fees.[1] We uphold the Commission's finding of liability and the award of compensatory damages. We reverse the award of back pay and remand for further consideration because we are not satisfied with the Commission's treatment of whether Hamilton acted with reasonable diligence in seeking alternative employment after the termination. Finally, we dismiss as premature that aspect of the petition for review challenging the award of attorney's fees.

## I. Liability

### A. The Facts

After a seven-day hearing, the Commission entered written findings of fact that span forty pages. We summarize the primary findings as follows. Hamilton, a gay man, worked for Natural Motion and a related company from 1984 until 1991 as, progressively, a shampoo assistant, hair stylist, and artistic director. In the spring of 1989, Hamilton developed lesions, swelling and discoloration on his right foot and ankle, and was diagnosed as having Kaposi's sarcoma, a malignancy which the Commission described as "an AIDS-defining opportunistic illness." Although Hamilton was diagnosed as having AIDS, the Commission found insufficient evidence that Natural Motion and its officers ever knew that he had this disease during the relevant time. Upon learning of the diagnosis, Hamilton told Sandra Butler that he had blood clots, bone or leg cancer, and Kaposi's sarcoma. Butler agreed to reduce his work schedule from six to four, and later to as low as three, days a week and to allow him to use a stool at work to keep his swollen leg elevated. During the next three years, Hamilton was subjected to derogatory remarks and other harassment by his fellow employees about his illness and sexual orientation. Between July 1989 and July 1991, he was hospitalized four times for treatment of his AIDS condition. Not until "near the time he was terminated," however, did he miss appointments with customers, approximately three a month; in such cases he would let the shop know in advance.

On January 30, 1991, Hamilton was handed a termination notice by the shop receptionist, signed by Sandra Butler. As reason for the firing, it stated that he had been "given the opportunity, but it is now apparent that you cannot successfully perform the duties assigned to you." Sandra Butler testified that the inability to perform referred to Hamilton's absences from work, inability to style clients' hair, tardiness, failure to obtain an operator's license, and taking shop money despite being warned. The Commission

---

1. As Hamilton died in July 1996, reinstatement is no longer in issue. His estate has been substituted as intervenor.

found, however, that each of these asserted reasons for the firing was pretextual. Specifically, it found that:

(1) The record failed to establish that Hamilton was excessively late, or that the lateness affected Natural Motion's business. Natural Motion kept no time or attendance records bearing on the issue.

(2) While Hamilton concededly missed appointments "toward the end of his tenure at NMS," Natural Motion "produced no documentary evidence of missed days, early departures, or unexcused or unexpected absences" on his part. Moreover, "[t]he record contains no evidence that [Natural Motion's] business was adversely affected in any way by [Hamilton's] absences beyond the inconvenience of rescheduling [his] clients, and an unspecified increase in inefficiency in the operation of the salon." In fact, the "only real detriment suffered because of [his] absences was to [Hamilton] himself measured in lost income."

(3) Natural Motion produced no written or specific oral evidence of client complaints about Hamilton's performance. On the contrary, credible testimony of two of his regular customers "establishes that [his] performance did not deteriorate with the progression of his illness."

(4) While Hamilton did not have an operator's license "and had no good reason for not obtaining one," Natural Motion was aware at all times that he lacked one; stylists may lawfully practice without a license if (as here) someone in the salon has a manager's license; and at the hearing Sandra Butler expressly denied firing Hamilton because he did not have a license.

(5) The assertion of stealing by Hamilton had been raised neither at the time of Hamilton's firing nor during investigatory proceedings before the District of Columbia Department of Human Rights, and was supported only by an undated letter of admonition from Butler and a hearsay report of a fellow-operator whose name had

**2.** The Commission also discredited testimony by the salon housekeeper that on one occasion Hamilton, in caring for the lesions on his foot and ankle, may have left blood and bloody tissue

never been disclosed to Hamilton's attorney.[2]

### B. The Finding of Discrimination

On the basis of these subsidiary findings, the Commission concluded that Hamilton had a disability within the meaning of the Human Rights Act, that he had been terminated because of that disability and his physical appearance (*i.e.*, his swollen leg), and that the firing could not be justified by the "business necessity" exception of the Act. Applying the allocation of burdens and order of proof prescribed by our decisions, *see American University v. District of Columbia Comm'n on Human Rights*, 598 A.2d 416, 422 (D.C.1991), the Commission found that the business reasons offered to support the firing were pretextual. Of particular importance, Natural Motion had "produced no documentary evidence of missed days, early departures or unexcused absences" supporting its claim of poor attendance by Hamilton. Moreover, for such absences as were conceded, the employer made no showing of resultant financial loss. "It is clear," the Commission stated, "that if [Natural Motion] continued accommodating [Hamilton] during his absences (especially in January, 1991), no hardship would have developed [to Natural Motion's] business." Thus, the real reason Hamilton was fired was the company's dislike of his physical condition and appearance, although the evidence did not show that he was fired because he had AIDS:

Although [Hamilton] never revealed his AIDS condition to [Natural Motion], it was clear that he had a handicapping condition. [He] had a visibly swollen leg. He was accommodated by recovering a stool to rest his leg. He for the most part performed his job well. He rarely missed appointments. When [he] missed any appointment it did not cause any hardship [to Natural Motion]. Yet respondent terminated his employment. It was obvious that [r]espondents, especially (Sandra) Butler, became uncomfortable with [Hamilton]. They feared the swollen leg.

in the toilet and on the floor of the bathroom. Particularly in view of the housekeeper's uncertainty as to when this occurred, the Commission credited Hamilton's denial of the incident.

By terminating Hamilton for this condition despite having received "assurances from [his] health provider that [his] condition was not a threat to anyone," Natural Motion committed unlawful discrimination under the Act.

## C. Review

Since the Commission entered forty pages of written findings that are far "more than a reiteration of the evidence," our "threshold" standard of review is satisfied. *Kennedy v. District of Columbia,* 654 A.2d 847, 853 (D.C. 1994). We also conclude that those findings are supported by substantial evidence in the record considered as a whole. D.C.Code § 1–1510(a)(3)(E); *Greater Washington Bus. Ctr. v. District of Columbia Comm'n on Human Rights,* 454 A.2d 1333, 1337 (D.C.1982). Our remaining task, then, is to determine whether in light of the governing statutes, the Commission's legal conclusions "flow rationally from [its] findings." *American University v. District of Columbia Comm'n on Human Rights,* 598 A.2d at 420.

As relevant here, D.C.Code § 1–2512(a)(1) makes it "an unlawful discriminatory practice" to discharge any individual from employment "wholly or partially for a discriminatory reason based upon ... personal appearance ... [or] physical handicap...." "Physical handicap" means "a bodily ... disablement which may be the result of ... illness ... for which reasonable accommodation can be made." *Id.* § 1–2502(23). As it did before the Commission, Natural Motion defends the termination of Hamilton under the "business necessity" exception contained in § 1–2503(a), specifically on the ground of his poor attendance. That exception, however,

> is applicable only ... where it can be proved by a respondent that, without such exception, such business cannot be conducted; a "business necessity exception" cannot be justified by the facts of increased cost to business, business efficiency, ... [or] the preferences of co-workers, employers, customers or any other person.

The exception thus requires a good deal more than "mere 'difficulty' in conducting a business by non-discriminatory means." *Truitt Management v. District of Columbia*

*Comm'n on Human Rights,* 646 A.2d 1007, 1009 (D.C.1994) (quoting with approval Commission's interpretation of the exception). Given the Commission's finding that, at most, Hamilton's occasional absences caused "an unspecified increase in inefficiency in the operation of the salon," it properly rejected the claim of business necessity. Natural Motion may well be right that beauty operators are not fungible and that at some point accommodation of Hamilton's absences or tardiness could have caused serious loss of patronage. But the Commission found no documented proof that the shop suffered even significant loss from his reduced attendance; to the contrary, "the only real detriment suffered because of [his] absences was to [Hamilton] himself measured in lost income." As Natural Motion produced no time or attendance records bearing on the issue, and as there was substantial evidence of repeated derogatory remarks by fellow employees directed to Hamilton's physical condition and appearance, the Commission's conclusion that the business necessity reasons advanced for the firing were pretextual is justified by the record.

We therefore sustain the conclusion of liability. Since Natural Motion makes no independent challenge to the Commission's award of damages for humiliation, embarrassment and indignity associated with the firing, we sustain that award as well.

## II. Back Pay

The Commission further ordered Natural Motion to pay Hamilton the approximate earnings he would have received (based on an annual income of $9,800) from the time of the firing until the reinstatement which it ordered. Natural Motion contends that this was error because Hamilton failed to present evidence that he had sought to mitigate his damages. We find the Commission's treatment of this issue deficient, and accordingly remand for its further consideration of the issue.

> [O]rdinarily a victim of discriminatory discharge is entitled to receive back pay, *i.e.,* the salary that [he] would have received from the employer but for the unlawful discriminatory acts. A back pay award

should equal the salary the complainant would have received from the time of the violation until the date on which the Commission issued its final order, minus the complainant's actual interim earnings or the amounts [he] would have earned had [he] diligently sought other work.

*Wisconsin Ave. Nursing Home v. District of Columbia Comm'n on Human Rights,* 527 A.2d 282, 291 (D.C.1987) (citations omitted). Once the complainant presents evidence demonstrating the amount of his damages, "the burden shifts to the defendant to establish the amount by which those damages should be reduced to ... show [his] failure to take reasonable efforts to mitigate [his] damages by finding alternative employment." *Id.* However, the defendant/respondent may "satisfy that burden through the testimony of [the complainant him]self." *Id.* at 292.

Remarkably, the Commission found that "[t]here is no evidence in the record indicating [Natural Motion's] challenge [to] Complainant's attempt at finding employment," and that accordingly it had "waived [the] right" to raise failure to mitigate. This finding is clearly wrong. Through questioning of Hamilton, Natural Motion plainly sought to show that he had made no efforts to obtain other employment. In response, Hamilton admitted that he had not looked for other work, explaining: "I know you cannot work without a license in Washington. I knew I could work in Natural Motion without a license." Later he testified that he had worked briefly as a shampoo assistant elsewhere and for a friend as a salon assistant in New Jersey. But except for these short periods, he had sought no work between the firing in January 1991 and the hearing in June of 1992. On this record, it is apparent both that Natural Motion challenged the failure to mitigate and that the Commission disregarded this evidence of non-diligence in failing to seek alternative employment.

The Commission went on to state, however, that at the time of the firing Hamilton's "condition was worse than at the time of the [later] hearing ... in the sense that his leg could not tolerate the standing while being a hairstylist." This observation seems inconsistent with the Commission's earlier finding that at the time he was fired Hamilton, with appropriate medication, was capable of continuing to work for Natural Motion under the accommodations previously made. On remand the Commission should reconcile these determinations. There is another reason for a remand. Intervenor cites analogous federal decisions requiring the employer, as part of its burden to prove non-mitigation, to adduce proof that comparable part-time work was available to an operator such as Hamilton who did not have a license; and Natural Motion concededly made no such showing here. This court, however, has taken a less categorical approach. In *Wisconsin Ave. Nursing Home, supra,* we stated that if the Commission "has reason to doubt" the availability of particular alternative employment, "it"—*i.e.,* the Commission—"can direct an employer to establish the availability of such employment." 527 A.2d at 292 n. 10. It is up to the Commission to decide whether the burden should be allocated in that way on these facts, an issue it did not reach here given its mistaken belief that Natural Motion had waived any failure to mitigate.

Natural Motion argues that Hamilton justified his failure to seek other employment strictly by his lack of a license, and notes the fact—acknowledged by the Commission— that unlicensed stylists can work if their practice is directly supervised by a licensed manager. D.C.Code § 2–435(a)(2) (1994). It also points to the Commission's finding that Hamilton had "had no good reason for not obtaining" a license. But these are only part of the circumstances the Commission should consider on remand. Hamilton was not merely an unlicensed operator; he was one for whom substantial accommodations had had to be made because of his physical condition. That fact too would be relevant to his prospects for obtaining employment elsewhere.[3]

---

**3.** Although in theory reconsideration of the back pay award could affect the Commission's award of medical expenses as well, Natural Motion has made no challenge to that award apart from its failed attack on the determination of liability. We therefore will not disturb that part of the order requiring it to pay Hamilton's medical expenses.

### III.

The Commission awarded Hamilton attorney's fees but has not yet determined the amount. Although Natural Motion attacks the award on various grounds, our decision in *Marlyn Condominium v. McDowell,* 576 A.2d 1346 (D.C.1990), requires us to dismiss this aspect of the petition for review. There we held that "[a]n award of attorney's fees is final [for purposes of appellate jurisdiction, D.C.Code § 11–721(a)(1) (1995) ] when the trial court has 'determined the quantum of attorney's fees to be paid,' not when the trial court 'merely establishe[s] entitlement to attorney's fees in an amount to be later determined.'" *Id.* at 1347 n. 1 (quoting *Trilon Plaza Co. v. Allstate Leasing Corp.,* 399 A.2d 34, 37 (D.C.1979)). Review of the award must await determination of the amount.

### IV.

In summary, we sustain the Commission's determination of liability under the Human Rights Act and the award of compensatory damages and medical expenses. We vacate the award of back pay and remand for further consideration of that issue. We dismiss the petition for review insofar as it challenges the award of attorney's fees, without prejudice to renewal upon fixing of the amount.

*So ordered.*